**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
*E-mail: bheikali@faruqilaw.com*
Joshua Nassir (SBN 318344)
*E-mail: jnassir@faruqilaw.com*
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
*Email: awand@wandlawfirm.com*
400 Corporate Pointe, Suite 300
Culver City, CA 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

HAROLD BROWER, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

THE KRAFT HEINZ COMPANY,

Defendant.

CASE NO.: '20 CV 1540 JM   WVG

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Harold Brower ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendant The Kraft Heinz Company ("Defendant"), based on Defendant's false and deceptive advertising and labeling of their Maxwell House ground coffee products. Plaintiff makes the following allegations based on the investigation of his counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## **INTRODUCTION**

1.      This case revolves around a straightforward and systemic course of false, misleading, and unlawful conduct: Defendant has grossly exaggerated the number of cups of coffee that certain varieties of Maxwell House ground coffee products (the "Products")[1] can make in order to induce consumer purchases and to charge consumers more for these products.

2.      Throughout the statute of limitations period, Defendant has sold the Products to consumers based on the representation that they contain enough ground coffee to make up to a specific number of servings (e.g., "**240** 6 FL OZ CUPS"). However, by following Defendant's own definitions and instructions, the Products do not contain nearly enough ground coffee to make the number of servings represented.

3.      Indeed, it is a classic and unlawful bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing.

4.      Plaintiff and other consumers purchased the Products because they reasonably believed – based on Defendant's representations – that these products contained enough coffee to make the specified number of servings. Had Plaintiff and other consumers known the truth (i.e., that the Products do not contain enough

[1] "Products" are further defined and listed in Paragraphs 12 and 28.

CLASS ACTION COMPLAINT

coffee to make the specified number of servings), they would have paid less for them, or would not have purchased them at all. As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

5.    Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled Products during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and for breach of express and implied warranty, intentional and negligent misrepresentation, unjust enrichment, and for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from at least some members of the proposed Classes, including Plaintiff.

7.    This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, as Defendant sells the Products in California to California consumers.

8.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Plaintiff purchased the Products in this District.

CLASS ACTION COMPLAINT

# **THE PARTIES**

9.     Plaintiff Harold Brower is a citizen of the United States and the State of California and he currently resides in San Diego County. In early 2020, Plaintiff purchased the Maxwell House Dark Roast, 28 oz product and the Maxwell House Original Roast, 28 oz product from a Vons and a Costco in San Diego, California, for his own personal benefit. In purchasing the Products, Plaintiff saw and relied on Defendant's representations made on the packaging. Specifically, Plaintiff reasonably believed that the Products contained enough ground coffee to make 240 cups or servings of coffee because he saw the representation "MAKES UP TO **240** 6 FL OZ CUPS" prominently printed on the front of each canister. Plaintiff's reasonable belief that the Products he purchased could make the represented number of servings was an important factor in his decision to purchase the Products. Plaintiff would have paid significantly less for the Products had he known that the Products did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as described herein.  Plaintiff was also damaged in his purchase because Defendant's false advertisement artificially inflated the price of the Product as a result of increased consumer demand generated by the false advertisement, which naturally led to an increase in the price charged.

10.    Despite being misled by Defendant with respect to the Products he purchased, Plaintiff lacks personal knowledge as to Defendant's specific business practices relating to the Products. Consequently, there is still doubt in his mind as to the possibility that some of the Products could contain enough coffee to make the advertised number of servings. Additionally, because there are numerous Products involved in Defendant's deceit, and due to the likelihood that Defendant may yet develop and market additional coffee products that misrepresent the serving yield, Plaintiff may again purchase a falsely-advertised product from Defendant under the

-3-

mistaken impression that the represented number of servings is accurate. Therefore, Plaintiff cannot rely on the accuracy of the Products' labeling with confidence and has no way of knowing whether the Products' label remains inaccurate. Indeed, Plaintiff regularly shops at stores where the Products are sold, and he would like to continue purchasing the Products in the future. Therefore, Plaintiff may purchase the Products in the future. Moreover, Class members will continue to purchase the Products, reasonably but incorrectly believing that they contain enough coffee to make the advertised number of servings.

11.    Defendant The Kraft Heinz Company is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at One PPG Place, Pittsburgh, Pennsylvania 15222. Maxwell House was founded in 1892 and was named after its first customer, the prestigious Maxwell House Hotel in Nashville, Tennessee.   According to the company's early advertising, President Theodore Roosevelt drank a cup of coffee at the hotel in 1907 and declared it was, "good to the last drop."   The company adopted this slogan and has remained a household name for over a century.   Maxwell House generates millions of dollars in sales each year.   General Foods acquired Maxwell House in 1928 and was acquired by Defendant in 1990 when Kraft merged with Philip Morris' General Foods unit, which then merged with Heinz in 2015 to form a food conglomerate that generated nearly $25 billion in revenue in 2019.

## FACTUAL ALLEGATIONS

### A.    The Products At Issue

12.    The products at issue in this case consist of all varieties (e.g., different types of roasts) and sizes (e.g., 11.5 oz., 30.6 oz., etc.) of Maxwell House ground coffee canisters, tins, and bricks which make a specific servings representation on the front label (e.g., "MAKES UP TO 90 6 FL CUPS").

13.    These Products include, but are not limited to, the following varieties of Maxwell House ground coffee canisters, tins, and bricks: Original Roast, Original

Roast Decaf, Half Caff, Smooth Bold, Dark Roast, Hazelnut, Vanilla, Master Blend, Morning Boost, 100% Colombian, Wake Up Roast, Breakfast Blend, House Blend, French Roast, Gourmet Roast, Intense Bold, and Light Roast.

14.    The Products are sold across the United States through third party retailers including grocery chains and large retail outlets.

**B.    Defendant Grossly Overstates The Number Of Servings The Products Can Make**

15.    Defendant represents on the packaging of each of the Products that they contain enough ground coffee to make up to a specified number of servings. For example, Defendant prominently state on the front packaging of the Maxwell House 100% Colombian Roast, 10.5 oz product: "MAKES UP TO **90** 6 FL OZ CUPS."

16.    Representative images of the front packaging of some of the Products are depicted below:

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

17.     Defendant places a materially identical representation on the front label of all the Products, although the number of represented servings of course varies based on the size of the Product.

18.     On "Brewing Instructions" on the back label of all the Products, Defendant instructs consumers to use 1 tablespoon of ground coffee to make 1 serving/cup of coffee.[2]

19.     One tablespoon of Maxwell House ground coffee weighs approximately 5 grams.

20.     Based on these standard measurements, it is evident that Defendant grossly overstates the number of servings the Products can make.

21.     By way of example, as depicted above, Defendant represents on the 10.5 oz tin of the Maxwell House 100% Colombian product that it "MAKES UP TO **90** 6 FL OZ CUPS."

22.     As set forth above, 1 tablespoon of ground coffee is needed to make 1 serving/cup. Therefore, 90 tablespoons of ground coffee are needed to make 90 servings/cups.

23.     As set forth above, one tablespoon of Maxwell House's ground coffee weighs approximately 5 grams. Therefore, 450 grams of ground coffee are needed to make the promised 90 servings [90 tablespoons x 5 grams].

24.     However, the 10.5 oz tin has a net weight of 297 grams. Therefore, it contains only 66% of the amount of ground coffee required to make up to 90 cups of coffee [(297 / 450) x 100%]. This is equivalent to approximately 59 cups of coffee.

25.     The same shortfall (i.e., only 59 cups of coffee) is calculated by dividing the total grams of coffee in the 10.5 oz. tin by the number of grams required to make a single serving [297 grams / 5 grams].

---

[2] Hereinafter, the term "cup" is synonymous, and used interchangeably with, the term "serving." Moreover, the term "cup" or "serving" is equivalent to 6 fluid ounces, based on Defendant's representations.

CLASS ACTION COMPLAINT

26.     In sum, the 10.5 oz. tin only contains enough coffee to make 59 cups, which is equivalent to 66% of the amount of ground coffee that is required to make the 90 cups of coffee:

- 297 grams / 450 grams = 66%
- 59 cups / 90 cups = 66%

27.     Thus, it is impossible for the Maxwell House 100% Colombian product to contain enough ground coffee to make anywhere close to 90 cups of coffee. Defendant's representation that the 10.5 oz. tin "MAKES UP TO **90** 6 FL OZ CUPS" is therefore false, deceptive, and misleading.

28.     The same calculations apply equally to all of the other Products. According to their net weight, as well as the weight per tablespoon of ground coffee, they are unable to make anywhere close to the represented number of cups. These approximate calculations are set forth in the following chart:

| Product Name | Net Weight (oz) | Net Weight (g) | Number of "Up To" Servings Promised | Approximate Number of Servings Received | Approximate Percentage of Servings Received |
|---|---|---|---|---|---|
| Original Roast | 11.5 oz. | 326g | 90 | 65 | 72% |
| Original Roast (brick) | 11.5 oz. | 326g | 90 | 65 | 72% |
| Original Roast | 23 oz | 652g | 180 | 130 | 72% |
| Original Roast | 30.6 oz | 869g | 240 | 174 | 73% |
| Original Roast | 42.5 oz | 1200g | 325 | 240 | 74% |
| Original Roast | 48 oz | 1360g | 380 | 272 | 72% |
| Original Roast Decaf | 11 oz | 311g | 90 | 62 | 69% |
| Original Roast Decaf (brick) | 11 oz | 311g | 90 | 62 | 69% |
| Original Roast Decaf | 22 oz | 623g | 180 | 125 | 69% |
| Original Roast Decaf | 29.3 oz | 830g | 240 | 166 | 69% |
| Half Caff | 11 oz | 311g | 90 | 62 | 69% |
| Half Caff | 11 oz | 311g | 90 | 62 | 69% |

CLASS ACTION COMPLAINT

| (brick) | | | | | |
|---|---|---|---|---|---|
| Half Caff | 25.6 oz | 726g | 210 | 145 | 69% |
| Smooth Bold | 11.5 oz | 326g | 90 | 65 | 72% |
| Dark Roast | 10.5 oz | 297g | 90 | 59 | 66% |
| Dark Roast (brick) | 10.5 oz | 297g | 90 | 59 | 66% |
| Dark Roast | 24.5 oz | 694g | 210 | 139 | 66% |
| Hazelnut | 11 oz | 311g | 90 | 62 | 69% |
| Vanilla | 11 oz | 311g | 90 | 62 | 69% |
| Master Blend (brick) | 11.5 oz. | 326g | 90 | 65 | 72% |
| Master Blend | 11.5 oz. | 326g | 90 | 65 | 72% |
| Master Blend | 26.8 oz | 760g | 210 | 152 | 72% |
| Morning Boost | 11.5 oz | 326g | 90 | 65 | 72% |
| Morning Boost | 26.7 oz | 759g | 210 | 152 | 72% |
| 100% Colombian (brick) | 10.5 oz | 297g | 90 | 59 | 66% |
| 100% Colombian | 10.5 oz | 297g | 90 | 59 | 66% |
| Wake Up Roast | 11.5 oz | 326g | 90 | 65 | 72% |
| Wake Up Roast | 30.65 oz | 869g | 240 | 174 | 73% |
| Breakfast Blend | 11 oz | 311g | 90 | 62 | 69% |
| Breakfast Blend (brick) | 11 oz | 311g | 90 | 62 | 69% |
| Breakfast Blend | 29.3 oz | 830g | 240 | 166 | 69% |
| House Blend | 10.5 oz | 297g | 90 | 59 | 66% |
| French Roast (brick) | 11 oz | 311g | 90 | 62 | 69% |
| French Roast | 11 oz | 311g | 90 | 62 | 69% |
| Gourmet Roast | 25.6 oz | 726g | 210 | 145 | 69% |
| Gourmet Roast (brick) | 11 oz | 311g | 90 | 62 | 69% |
| Intense Bold | 11.5 oz | 326g | 90 | 65 | 72% |
| Light Roast | 11.5 oz | 326g | 90 | 65 | 72% |

29.    There are 38 varieties of the Products listed in the chart above. Each and every one of them contains substantially less ground coffee than is required to

CLASS ACTION COMPLAINT

make the recommended number of "up to" servings promised on the packaging. On average, these Products contain enough ground coffee to make only 70% of the number of servings promised on the packaging, thus revealing a systematic course of unlawful conduct by Defendant to deceive and shortchange consumers.

**C.    The False And Deceptive Serving Amount Representation Harms Consumers**

30.    Plaintiff and other consumers purchased the Products relying on Defendant's serving amount representations on the Products' packaging.

31.    Plaintiff and other consumers reasonably expect that, if they follow the serving instructions, the Products will produce the number of servings/cups of coffee as represented on the Products' packaging.

32.    Plaintiff's and consumer's reasonable belief that the Products are able to make up to the represented number of cups of coffee was a significant factor in each of their decisions to purchase the Products.

33.    Plaintiff's and Class members did not know, and had no reason to know, that the Products' labeling vastly overstates the number of cups of coffee they are able to make. At the time of purchase, a reasonable consumer cannot measure or calculate how many servings the Products can make. Nor are reasonable consumers expected to keep track of the precise number of cups of coffee they make over a period of time.

34.    As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendant knew or should have known that each of the Products falsely and deceptively overstates the number of servings of coffee that can be made.

35.    Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's serving size representations. Nonetheless, Defendant deceptively advertises the Products in order

to deceive consumers into believing they are getting considerably more coffee than they are paying for.

36.     Consumers are willing to pay more for the Products based on the belief that the Products contain enough ground coffee to make up to the represented number of servings. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that they were getting fewer servings of coffee than what they were promised.

37.     By analogy, if a consumer purchased a six-pack of soda, but only received four cans of soda, the consumer would only be receiving 66.67% of what she paid for. The situation here is no different in terms of the harm to the consumer. The only difference is that, due to the nature of the Products, Defendant is able to conceal the gross shortfall of coffee because reasonable consumers do not keep track of the number of cups of coffee they make over a period of time.

38.     Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**

All persons who purchased any of the Products in the United States within the applicable statute of limitations period.

**California Subclass**

All persons who purchased any of the Products in the state of California within the applicable statute of limitations period.

CLASS ACTION COMPLAINT

**California Consumer Subclass**

All persons who purchased any of the Products in the state of California for personal, household, or family purposes, within the applicable statute of limitations period.

40.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

41.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

42.     Plaintiff is a member of the Classes.

43.     <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical. The Products are sold throughout the state of California and the United States, by third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

44.     <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

        a.  Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

-13-

CLASS ACTION COMPLAINT

b. Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c. Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d. Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

e. Whether Plaintiff and the Class are entitled to damages and/or restitution, and in what amount;

f. Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

45. Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same serving amount representations, and (b) do not contain enough ground coffee to make anywhere close to the represented serving amount. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

46. <u>Typicality</u>: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

-14-

CLASS ACTION COMPLAINT

47.    Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

48.    Superiority: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.  Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**COUNT I**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750,** *et seq.*
**(*for the California Consumer Subclass*)**

49.    Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

50.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

51.    The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c), and the purchases of such Products by Plaintiff and members of the California

CLASS ACTION COMPLAINT

Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

52.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …"  By marketing the Products with their current packaging, Defendant have represented and continue to represent that the Products have characteristics (i.e., contain enough ground coffee to make up to a specified number of servings) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

53.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendant have represented and continue to represent that the Products are of a particular standard (i.e., contain enough ground coffee to make up to a certain number of servings) which they do not possess. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

54.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as containing enough ground coffee to make a specified number of servings, but not intending to sell the Products as such, Defendant has violated section 1770(a)(9) of the CLRA.

55.     At all relevant times, Defendant has known or reasonably should have known that the Products did not contain enough ground coffee to make the represented number of servings, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the packaging in purchasing the Products.

56.     Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and

deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

57.    Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products contain substantially less ground coffee to make the promised number of servings.

58.    In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue attached to this Complaint.

59.    On June 18, 2020 Plaintiff, by and through his counsel, sent a notice letter by certified mail to Defendant of his intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Defendant received this notice and demand letter on June 22, 2020.  Because Defendant has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after it received the foregoing notice and demand letters, Plaintiff is timely filing this Complaint for damages as permitted under Cal. Civ. Code § 1782(d).

60.    Plaintiff also requests that this Court enjoin Defendant from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future and to order restitution to Plaintiff and the Class. Plaintiff also requests an award of actual and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to California Civil Code § 1780(a).

**COUNT II**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
***(for the California Subclass and California Consumer Subclass)***

61.    Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

-17-

CLASS ACTION COMPLAINT

62.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

63.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

64.    Defendant has represented and continue to represent to the public, including Plaintiff and members of both the California Subclass and California Consumer Subclass, through its deceptive packaging, that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

65.    As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the California Subclass and California Consumer Subclass.

66.    Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to him and members of both the California Subclass and California Consumer Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the California Subclass and California Consumer Subclass may be irreparably

-18-

harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT III
### Violation of California's Unfair Competition Law ("UCL"),
### California Business & Professions Code § 17200, *et seq.*
### (*for the California Subclass and California Consumer Subclass*)

67.     Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

68.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

69.     The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

70.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the California Subclass and California Consumer Subclass.

71.     Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers as to how many cups of coffee the Products can make is of no benefit to consumers. Therefore, Defendant's conduct

-19-

was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the California Subclass and California Consumer Subclass.

72.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendant misled Plaintiff and members of the California Subclass and California Consumer Subclass, Defendant's conduct was "fraudulent."

73.     Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the California Subclass and California Consumer Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the California Subclass and California Consumer Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**COUNT IV**
**Breach of Express Warranty**
**(*for the California Subclass and California Consumer Subclass*)**

74.     Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

75.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

76.     California's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods

CLASS ACTION COMPLAINT

1  shall conform to the affirmation or promise," and "(b) Any description of the goods
2  which is made part of the basis of the bargain creates an express warranty that the
3  goods shall conform to the description." Cal. Com. Code § 2313.

4       77.    Defendant has expressly warranted on the Products' packaging that
5  they can make up to a specific number of servings. For example, Defendant
6  expressly state on the packaging of the 30.6 oz. canister of the Original Roast that it
7  "MAKES UP TO **240** 6 FL OZ CUPS." However, as alleged herein, this express
8  representation is patently false, as the 30.6 oz. canister can only make up to 174
9  cups of coffee, or only 73% of the amount of ground coffee promised by Defendant.
10  All of the other varieties of the Products contain materially identical express
11  representations that are false.

12       78.    These representations about the Products: (a) are affirmations of fact or
13  promises made by Defendant to consumers that the Products contain enough ground
14  coffee to make a specific number of servings; (b) became part of the basis of the
15  bargain to purchase the Products when Plaintiff and other consumers relied on the
16  representation; and (c) created an express warranty that the Products would conform
17  to the affirmations of fact or promises. In the alternative, the representations about
18  the Products are descriptions of goods which were made as part of the basis of the
19  bargain to purchase the Products, and which created an express warranty that the
20  Products would conform to the product description.

21       79.    Plaintiff and members of the California Subclass and California
22  Consumer Subclass reasonably and justifiably relied on the foregoing express
23  warranties, believing that the Products did in fact conform to those warranties.

24       80.    Defendant has breached the express warranties made to Plaintiff and
25  members of the California Subclass and California Consumer Subclass by failing to
26  manufacture the Products with enough ground coffee to make the specific number of
27  servings that were expressly warranted on the packaging.

28       81.    Plaintiff and members of the California Subclass and California

CLASS ACTION COMPLAINT

Consumer Subclass paid a premium price for the Products but did not obtain the full value of the Products as represented. If they had known of the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

82.    As a result, Plaintiff and members of the California Subclass and California Consumer Subclass suffered injury and deserve to recover all damages afforded under the law.

83.    Within a reasonable amount of time after Plaintiff discovered that Defendant did in fact breach the express warranty, Plaintiff notified Defendant of the breach.

## COUNT V
## Breach of Implied Warranty
### (for the California Subclass and California Consumer Subclass)

84.    Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

85.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

86.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Cal. Com. Code § 2314(1).

87.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any."  Cal. Com. Code § 2314(2)(f).

88.    Defendant is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the

CLASS ACTION COMPLAINT

Products to California consumers.

89. By advertising the Products with their current packaging, Defendant made an implied promise that the Products contain enough ground coffee to make up to a specific number of servings. The Products have not "conformed to the promises…made on the container or label" because they do not contain enough ground coffee to make up to the specific number of servings. Plaintiff, as well as California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.

90. Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

91. If Plaintiff and members of the California Subclass and California Consumer Subclass had known that the Products could not make as many servings of coffee as represented, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Subclass and California Consumer Subclass have suffered injury and deserve to recover all damages afforded under the law.

**COUNT VI**
**Intentional Misrepresentation**
***(for the California Subclass and California Consumer Subclass)***

92. Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

93. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

94. Defendant marketed the Products in a manner indicating that they contain enough ground coffee to make up to a specific number of servings. However, the Products cannot make anywhere close to the represented number of

-23-

servings. Therefore, Defendant has made misrepresentations about the Products.

95.    Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

96.    At all relevant times when such misrepresentations were made, Defendant knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

97.    Defendant intends that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendant.

98.    Plaintiff and members of the California Subclass and California Consumer Subclass have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

99.    Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and members of the California Subclass and California Consumer Subclass have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**COUNT VII**
**Negligent Misrepresentation**
***(for the California Subclass and California Consumer Subclass)***

100.    Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

101.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against

-24-

CLASS ACTION COMPLAINT

Defendant.

102.   Defendant has marketed the Products in a manner indicating that they contain enough ground coffee to make a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendant has made misrepresentations about the Products.

103.   Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

104.   At all relevant times when such misrepresentations were made, Defendant knew or had been negligent in not knowing that that the Products did not contain enough ground coffee to make the specified number of servings. Defendant had no reasonable grounds for believing its misrepresentations were not false and misleading.

105.   Defendant intends that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendant.

106.   Plaintiff and members of the California Subclass and California Consumer Subclass have reasonably and justifiably relied on Defendant's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

107.   Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and members of the California Subclass and California Consumer Subclass have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

CLASS ACTION COMPLAINT

**COUNT VIII**
**Quasi Contract/Unjust Enrichment/Restitution**
(*for the California Subclass and California Consumer Subclass*)

108.   Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

109.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

110.   As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the California Subclass and California Consumer Subclass to induce them to purchase the Products. Plaintiff and members of the California Subclass and California Consumer Subclass have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant. Plaintiff and members of the California Subclass and California Consumer Subclass therefore have been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

111.   Plaintiff and members of the California Subclass and California Consumer Subclass have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiff and members of the California Subclass and California Consumer Subclass.

112.   The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the California Subclass and California Consumer Subclass – i.e., Plaintiff and members of the California Subclass and California Consumer Subclass did not receive the full value of the benefit conferred upon Defendant.

113.   Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it without paying Plaintiff and the members of the California Subclass and California Consumer Subclass back for the difference

-26-

of the full value of the benefits compared to the value actually received.

114. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the California Subclass and California Consumer Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from Plaintiff and members of the California and California Consumer Subclasses as a result of its deceptive, misleading, and unlawful conduct as alleged herein.

**COUNT IX**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.***
**Implied Warranty of Merchantability Under California Law**
**(*for the Nationwide Class*)**

115. Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

116. Plaintiff brings this claim individually and on behalf of the proposed Nationwide Class.

117. The Products are consumer products within the meaning of 15 U.S.C. § 2301(1).

118. Plaintiff and members of the Nationwide Class are consumers within the meaning of 15 U.S.C. § 2301(3).

119. Defendant is a supplier and warrantor within the meaning of 15 U.S.C. § 2301(4) and (5).

120. In connection with the sale of the Products, Defendant issued an "implied warranty" within the meaning of 15 U.S.C. § 2301(7), which warranted that the Products could make up to a specific number of servings, when in fact the Products do not contain enough ground coffee to make up to the specific number of servings.

121. By reason of Defendant's breach of implied warranty representing that the Products can make up to a specific number of servings, Defendant has violated the statutory rights due to Plaintiff and members of the Nationwide Class pursuant

-27-

to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, thereby damaging Plaintiff and members of the Nationwide Class

122. Prior to filing this action, Plaintiff, by and through his counsel, provided Defendant with written notice of their claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendant that he was acting on behalf of a Classes defined as all consumers who purchased the Products during the applicable statute of limitations period.

123. Plaintiff and the other members of the Nationwide Class have suffered injury and are entitled to damages in an amount to be proven at trial, along with attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully prays for following relief:

A. Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B. A declaration that Defendant's actions, as described herein, violate the claims described herein;

C. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful act described above;

D. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E. An award of all economic, monetary, actual, consequential, compensatory, statutory, and treble damages caused by Defendant's conduct;

-28-

F.     An award of punitive damages;

F.     An award to Plaintiff and his counsel of his reasonable expenses and attorneys' fees;

G.     An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

H.     For such further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED:  August 7, 2020          **FARUQI AND FARUQI, LLP**


By: /s/ *Benjamin Heikali*
Benjamin Heikali
Joshua Nassir

The Wand Law Firm, P.C.
Aubry Wand


*Attorneys for Plaintiff and the Putative Classes*

-29-

CLASS ACTION COMPLAINT

DocuSign Envelope ID: 3B6ACFE7-8968-478E-87F4-471D5280564C

## <u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>

I, Harold Brower, declare as follows:

1.      I am a Plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.      This Class Action Complaint is filed in the proper place of trial because the transaction giving rise to my claims, my purchase of the product at issue, occurred in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, executed on ___8/7/2020 | 3:20 PM PDT___ at San Diego, California.

DocuSigned by:

_____
2AEB376D40524E0...

Harold Brower